**STATE of Missouri,
Plaintiff–Respondent,**

v.

**Ronald F. DIXON,
Defendant–Appellant.**

**No. 16939.**

Missouri Court of Appeals,
Southern District,
Division One.

April 3, 1991.

Motion for Rehearing or Transfer to Supreme Court Denied April 19, 1991.

William L. Webster, Atty. Gen., Barbara J. Wood, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Dee Wampler, Wampler, Wampler & Catt, Springfield, for defendant-appellant.

MAUS, Presiding Judge.

A jury found defendant, Ronald F. Dixon (defendant), guilty of transporting cocaine, § 195.025 RSMo 1986 and possession of cocaine, § 195.020 RSMo 1986.[1] Defendant was sentenced to imprisonment for 10 years on each count, the sentences to run concurrently. Defendant's sole point on appeal is that the trial court erred in refusing to suppress, and admitting in evidence, cocaine found in the spare tire in the trunk of the automobile defendant was driving. The following is an outline of the facts relevant to defendant's appeal.

On March 27, 1989, at approximately 11:00 a.m., Corporal Matt Brown and Trooper Ron Replogle of the Missouri Highway Patrol were checking traffic on Interstate 44 in the urban area of Springfield. Brown was in a patrol car parked on the south shoulder of the eastbound lane of I-44. His patrol car was equipped with a radar unit and was headed east. Brown observed the traffic visually and on the radar unit as it passed. Replogle was parked on the south shoulder of the eastbound lane approximately one-half mile east of Brown.

Brown saw the blue Ford LTD automobile driven by defendant go past his patrol car. The defendant was driving 60 m.p.h. in a 55-m.p.h. zone. Brown also saw the defendant change lanes without a proper signal. He radioed this information to Replogle.

Replogle caused the defendant to pull to the shoulder of the highway and stop. At the trooper's request, the defendant came back to the highway patrol car. Two passengers remained in the automobile. Replogle told the defendant of the violations that had been observed and that he was going to give him a warning. Replogle observed that the defendant was extremely nervous, he was breathing with difficulty and his voice cracked when he spoke. This was true even after the defendant had been told he was only receiving a warning. Replogle determined that he was dealing with something more than minor traffic violations and called for Brown to join him.

Before Brown arrived, Replogle asked the defendant where he had been. The defendant said he was returning to Wisconsin from Texas where he had been on vacation. He asked the defendant who the other two men in the Ford were in relation to him. The defendant said they were friends. When asked, the defendant said he did not know where they worked.

After Brown arrived, Replogle talked with the other two men in the Ford. Replogle testified: "A. Well, I talked to them and they contradicted something that Mr. Dixon had told me about where they had been. Mr. Dixon had said they had been to—through Arkansas to pick up one of the men and both men, both of the other men told me that in fact they had all left Milwaukee together rather than at some point Mr. Dixon having traveled through Arkansas to pick up one of the other men."

Replogle then asked the defendant for permission to search the Ford. Replogle said he would be searching for guns, drugs or large sums of money. The defendant

1. Section 195.020 was repealed upon the enactment of the "Comprehensive Drug Control Act of 1989", effective August 28, 1989. (L.1989, S.B. Nos. 215 & 58, § A.) The possession of the quantity of cocaine involved in this case is the crime of trafficking drugs in the second degree and is a class A felony under § 195.223 of the Comprehensive Drug Control Act of 1989. See § 1.160 RSMo 1986, *State v. Hawkins,* 482 S.W.2d 477 (Mo.1972) and *State v. Freeman,* 791 S.W.2d 471 (Mo.App.1990).

orally consented, but refused to sign a written consent form.

Replogle asked him for the keys to the trunk of the Ford. The defendant took a key ring containing a large number of keys from the ignition. None would fit the trunk. The defendant, along with the patrolmen, searched the interior of the Ford for the key. When the key could not be found, Brown radioed for a locksmith. Before the locksmith unlocked the trunk, Replogle asked the defendant and his two companions to take off their shoes. The key to the trunk fell out of defendant's right shoe. By the use of that key, the trunk was opened. It contained four bags of clothing and a spare tire. After the bags were searched, Brown picked up the spare tire. He told Replogle that it was heavier than expected and had fresh tool marks on it. It was at half the normal air pressure. Brown removed the tire from the trunk and pressed on it. He felt a hard object inside the tire. He let the air out of the tire and tried to open it. When he could not do so, he put it in the patrol car and took it to the highway patrol headquarters and it was opened by a tire machine. Two "bricks" of cocaine were found in the tire. One brick contained 999.82 grams of cocaine. The second brick contained 998.51 grams of cocaine. When Replogle was told by Brown that the cocaine had been found, Replogle arrested the defendant and his companions.

The defendant's sole point on appeal is that the trial court erred in admitting the cocaine in evidence because the defendant did not orally consent to a search of the spare tire and that "the initial stop was not supported by probable cause in violation of the Fourth Amendment, and that the removal of the tire and search conducted at a distant place was without appellant's consent and in violation of the Fourth Amendment, U.S. Constitution." To support that point, the defendant cites 32 cases. It is not necessary to analyze in this opinion each of those citations. Those cases cited are not applicable or are contrary to controlling authority. This case is governed by the principles announced in the controlling authority of *State v. Burkhardt*, 795

S.W.2d 399 (Mo. banc 1990) and *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). The facts in this case are substantially the same as the facts in *State v. Burkhardt*, supra.

■ The defendant's contention he was illegally stopped has no merit. He was driving 60 m.p.h. in violation of a 55–m.p.h. speed limit. He changed lanes without giving a signal required by law. "Here, the troopers observed defendant's car violating the posted speed limit, hence stopping the car for issuance of a traffic summons was clearly within their authority. § 304.010.2, RSMo Supp.1989; *State v. Reynolds*, 753 S.W.2d 1, 2 (Mo.App.1988)." *Burkhardt*, 795 S.W.2d at 405.

■ The defendant contends he did not orally consent to the search of the tire. He emphasizes that the consent form, which he refused to sign, authorized the search of the automobile and its "contents". He concludes that the fact his oral consent did not include "contents", establishes that the officers, in searching the tire, exceeded his consent and made an invalid search. It is not necessary to construe the import of the defendant's oral consent. Before the trunk and tire were searched, the officers had knowledge of the following. The defendant was excessively nervous. He and his companions gave conflicting accounts of their activities. The defendant got the keys from the ignition to open the trunk. When those keys did not do so, he engaged in the pretext of searching the vehicle. When he removed his shoes, the key to the trunk fell from his shoe. Interstate 44 is well known as a route for the transportation of illegal drugs.

"Such automobile search may be conducted on probable cause to believe that contraband is concealed within, a belief springing from circumstances that would justify issuance of a warrant. *U.S. v. Ross*, 456 U.S. 798, 809, 102 S.Ct. 2157, 2164, 72 L.Ed.2d 572, 584 (1982). Probable cause may arise when the facts and circumstances within the knowledge of the seizing officer are sufficient in themselves to produce in a man of reasonable

caution a belief that the contents of the automobile offend the law." *Burkhardt,* 795 S.W.2d at 404.

The foregoing circumstances establish probable cause for the officers to believe there was contraband in the Ford automobile. *State v. Burkhardt,* supra. Cf. *United States v. Johns,* 469 U.S. 478, 105 S.Ct. 881, 83 L.Ed.2d 890 (1985) and *United States v. Sharpe,* 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985).

"The presence of probable cause to believe that contraband was concealed somewhere within defendant's automobile permitted an immediate search without the necessity of presenting the issue to a magistrate. *State v. Morgan,* 592 S.W.2d 796, 805 (Mo. banc 1980), vacated, 449 U.S. 809, 101 S.Ct. 56, 66 L.Ed.2d 12 (1980), orig. op. aff'd., 612 S.W.2d 1 (Mo. banc 1981).... When the search began, its scope was not limited to the containers in which the marihuana was concealed but instead extended to places in which the object of the search might be found, *U.S. v. Ross,* 456 U.S. 798, 823, 102 S.Ct. 2157, 2172, 72 L.Ed.2d 572, 593 (1982); *State v. Jackson,* 646 S.W.2d 367, 369 (Mo.App.1982), including the luggage in the Passenger compartment as well as the trunk." *Burkhardt,* 795 S.W.2d at 407.

The defendant's reliance upon *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), does not aid him. In that case, a footlocker was the object sought to be searched before it was placed in the trunk of an automobile. It was not and never became a part of the automobile. After the footlocker had been seized and taken to the police station, the court held that after it had been taken to the police station the automobile exception did not authorize a warrantless search of the footlocker. *United States v. Chadwick,* supra, and *Arkansas v. Sanders,* 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979), also cited by the defendant, have been distinguished. They are not applicable to the facts of this case. "Unlike *Chadwick* and *Sanders,* in this case police officers had probable cause to search respondent's entire vehicle." *United States*

*v. Ross,* 456 U.S. at 817, 102 S.Ct. at 2168–2169, 72 L.Ed.2d at 589 (footnote omitted). Also see *United States v. Johns,* supra.

The permissible scope of the officers' warrantless search of the Ford automobile has been succinctly declared.

"The exception recognized in Carroll is unquestionably one that is 'specifically established and well delineated.' We hold that the scope of the warrantless search authorized by that exception is no broader and no narrower than a magistrate could legitimately authorize by warrant. If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of *every part of the vehicle and its contents* that may conceal the object of the search." *United States v. Ross,* 456 U.S. at 825, 102 S.Ct. at 2173, 72 L.Ed.2d at 594. (Emphasis added.)

■ The spare tire was a part of the Ford automobile. It could also be considered as a container or part of the contents of that automobile. It was capable of concealing illegal drugs. *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), held that investigating officers had authority to use reasonable means to search a vehicle, including ripping the upholstery of a rumble seat. *United States v. Johns,* supra, approved a search of packages removed from two pickup trucks after those trucks had been taken to DEA headquarters, even though the warrantless search was made three days after those packages had been removed. *United States v. Sharpe,* 470 U.S. at 686, 105 S.Ct. at 1575, 84 L.Ed.2d at 616, approved a search during the detention of a vehicle while "the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." Under those authorities, Highway Patrolmen Brown and Replogle were authorized to use reasonable means to force open the spare tire. They could have detained the automobile while they were causing a tire machine to be brought to the scene. It was within their authority to take the spare tire to the tire

machine. In doing so, they were diligently pursuing a means of investigation that was likely to confirm or dispel their suspicions quickly. The defendant's sole point is denied and the judgment is affirmed.

CROW, J., concurs in result and files concurring opinion.

PREWITT, J., dissents.

CROW, Judge, concurring.

The probable cause issue in this case is a hairline call. Were it not for defendant's feigned search for the trunk key which later fell from his shoe, I would hold the officers lacked probable cause to believe the trunk contained contraband. However, the trunk key charade, coupled with the other factors discussed in the principal opinion, supplies a basis for probable cause equal to that in *State v. Burkhardt*, 795 S.W.2d 399 (Mo. banc 1990). I therefore agree the search was permissible.

There is another problem, but it is unaddressed in defendant's brief. As explained in footnote 1 of the principal opinion, § 195.020, RSMo 1986—the statute making it a crime to possess cocaine—was repealed effective August 28, 1989, by the legislation identified in that footnote. The same legislation also repealed § 195.200, RSMo Supp.1988, the statute setting forth the range of punishment for violating § 195.020, RSMo 1986. Under § 195.200, the range of punishment for possession of cocaine was imprisonment in a state correctional institution for not more than twenty years or imprisonment in a county jail for not less than six months nor more than one year.

The 1989 legislation contained a new provision making it unlawful to possess a controlled substance: § 195.202, RSMo Cum. Supp.1989. Under that section possessing cocaine is a class C felony.

Count II of the information charged defendant with possessing cocaine March 27, 1989, a date five months prior to the effective date of the 1989 legislation. However, defendant's trial took place February 13–14, 1990, some five and a half months after the effective date of the 1989 legislation. At the time of defendant's trial the maximum term of imprisonment for a class C felony was seven years. § 558.011.1(3), RSMo 1986. That is still true. § 558.011.1(3), RSMo Cum.Supp.1990.

The jury assessed defendant's punishment on Count II at ten years' imprisonment. As noted in the principal opinion, the trial court imposed that sentence on Count II, ordering it to run concurrently with the ten-year sentence on Count I (the charge of transporting cocaine).

Section 1.160, RSMo 1986, provides:

"No offense committed ... or prosecution commenced or pending previous to or at the time when any statutory provision is repealed or amended, shall be affected by the repeal or amendment, but the trial and punishment of all such offenses ... shall be had, in all respects, as if the provision had not been repealed or amended, except (1) that all such proceedings shall be conducted according to existing laws; and (2) that if the penalty or punishment for any offense is reduced or lessened by any alteration of the law creating the offense, the penalty or punishment shall be assessed according to the amendatory law."

In *State v. Wommack*, 803 S.W.2d 170 (Mo.App.1991), the accused was charged with two counts, one of which was possessing cocaine. As in the instant case, the possession in *Wommack* occurred before the effective date of the 1989 legislation but the trial occurred after the effective date. The jury in *Wommack* convicted the accused of both counts, assessing a ten-year sentence on the possession count and a two-year sentence on the other count. The trial court imposed those sentences, ordering them to run consecutively.

On appeal the accused maintained that by reason of § 1.160, RSMo 1986 (quoted above), he was entitled to the benefit of the lower range of punishment for the possession count in effect at time of trial. The accused asked this Court to vacate the sentence on the possession count and remand the case to the trial court for resentencing on that count as a class C felony. Relying on *State v. Wright*, 797 S.W.2d 811 (Mo.

App.1990), and *State v. Freeman*, 791 S.W.2d 471 (Mo.App.1990), this Court held the accused was entitled to that relief. The sentence on the possession count was vacated and the case was remanded to the trial court for resentencing under the range of punishment established by the 1989 legislation.

The instant case differs from *Wommack* in that here the trial court ordered the sentence on the possession count (Count II) to run concurrently with the sentence on the transporting count (Count I). Under a principle characterized the "concurrent sentence doctrine," it has been held a court may pass on the validity of fewer than all counts in a multi-count conviction if a ruling in the appellant's favor as to the challenged counts would not reduce the penalty imposed as to the valid conviction. *State v. Supinski*, 779 S.W.2d 258, 264–65[11] (Mo. App.1989); *State v. Davis*, 624 S.W.2d 72, 77[6] (Mo.App.1981).

It may be defendant's counsel in the instant case concluded it would be futile to attack the sentence on Count II because counsel believed the sentence on Count I is unassailable, hence the concurrent sentence doctrine would bar relief on Count II.

Be that as it may, I am satisfied we should not consider the validity of the sentence on Count II *sua sponte*. My remarks about that sentence are made solely because of the statement in footnote 1 of the principal opinion that defendant's possession of the quantity of cocaine here constitutes the crime of trafficking drugs in the second degree, a class A felony under the 1989 legislation (§ 195.223, RSMo Cum. Supp.1989). I believe any effort to justify defendant's sentence on Count II on that basis would conflict with *Wommack*. As we observed in *Wommack*, the accused was tried for possessing cocaine, not trafficking it. Although the instructions in the instant case are omitted from the legal file, I doubt the verdict-directing instruction on Count II hypothesized defendant possessed the quantity of cocaine necessary to constitute the crime of trafficking.

An attentive reader may also wonder whether it was proper to convict defendant

of both transporting and possessing the same cocaine. That question, however, is also unaddressed in defendant's brief, and because of the concurrent sentences I do not feel compelled to consider it *sua sponte*.

For the above reasons I concur in the principal opinion except its footnote 1.